UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 21-252 JGB (SPx)** | Date | May 21, 2021 |
| Title | *Regina Marquez v. Southwire Company, LLC, et al.* | | |

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 13); (2) DENYING AS MOOT Defendant's Motion to Strike and to Dismiss (Dkt. No. 8); and (3) VACATING the May 24, 2021 Hearing (IN CHAMBERS)

Before the Court are a Motion to Remand filed by Plaintiff Regina Marquez, ("Motion," Dkt. No. 13), and a Motion to Strike or Dismiss Class Allegations filed by Defendant Southwire Company, LLC, ("MTS," Dkt. No. 8) (collectively, "Motions"). The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motions, the Court GRANTS the Motion to Remand and DENIES AS MOOT the Motion to Strike or Dismiss. The Court vacates the hearing set for May 24, 2021.

## I. BACKGROUND

On December 14, 2020, Plaintiff Regina Marquez, individually and on behalf of similarly situated individuals, filed a Complaint in the Superior Court of California for the County of San Bernardino against Defendants Southwire Company, LLC ("Southwire") and Does 1 through 100. ("Complaint," Dkt. No. 1-1.) On February 12, 2021, Defendant Southwire removed the action to federal court, on the basis of diversity jurisdiction and pursuant to the Class Action Fairness Act ("CAFA"). ("Notice of Removal," Dkt. No. 1.)

The Complaint alleges eight causes of action: (1) unpaid overtime in violation of Cal. Lab. Code §§ 510 and 1198; (2) unpaid meal period premiums in violation of Cal. Lab. Code §§ 226.7and 512(a); (3) unpaid rest period premiums in violation of Cal. Lab. Code § 226.7; (4)

unpaid minimum wages in violation of Cal. Lab. Code §§ 1194 and 1197; (5) final wages not timely paid in violation of Cal. Lab. Code §§ 201 and 202; (6) non-compliant wage statements in violation of Cal. Lab. Code § 226(a); (7) unreimbursed business expenses in violation of Cal. Lab. Code §§ 2800 and 2802; and (8) violation of Cal. Bus. & Prof. Code § 1700, et seq.

Defendant filed the MTS on February 19, 2021. Plaintiff filed her opposition on March 1, 2021. (Dkt. No. 9.) Defendant replied on March 3, 2021. (Dkt. No. 10.)

Plaintiff filed the Motion to remand on March 2, 2021. On April 5, 2021, Defendant filed an Opposition. ("Opposition," Dkt. No. 15.) Plaintiff replied on April 12, 2021. ("Reply," Dkt. No. 17.)

## II. FACTUAL ALLEGATIONS

Plaintiff Regina Marquez ("Plaintiff" or "Marquez") is a California resident who was employed by Defendant Southwire, a Delaware limited liability company with employees in California. (Compl. ¶ 6.) Plaintiff brings a class action against Southwire on behalf of a proposed class of "[a]ll current and former hourly-paid or non-exempt employees of Defendants within the State of California at any time during the period from June 17, 2016 to final judgment." (Id. ¶¶ 12-13.)

Plaintiff was employed by Defendant Southwire as an hourly-paid, non-exempt employee from May 2018 to May 2019. (Id. ¶ 18.) During their employment with Defendants, Plaintiff and other prospective class members worked over eight hours in a day, and/or over forty hours in a week. (Id. ¶ 23.) Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees in California. (Id. ¶ 24.) The scheme involved failing to pay them for all hours worked, missed meal periods, and missed rest breaks. (Id.)

Plaintiff alleges that she and other class members did not receive certain wages for overtime compensation (id. ¶ 25); the required rest and meal periods (id. ¶ 26); timely and complete meal periods or payment of one additional hour of pay (id. ¶ 27); all rest periods or payment of one additional hour of pay when a rest period was missed (id. ¶ 28); at least minimum wages for all hours worked (id. ¶ 29); wages owed to them at the time of their discharge or resignation (id. ¶ 30); complete and accurate wage statements (id. ¶ 31); or reimbursement for necessary business-related expenses (id. ¶ 32). Defendant also failed to keep complete and accurate payroll records for Plaintiff and other class members. (Id. ¶ 33.)

Thus, Plaintiff alleges that, as a pattern and practice, Defendant failed to pay overtime wages to Plaintiff and class members for all hours worked; failed to provide the requisite uninterrupted and timely meal and rest periods; failed to pay at least minimum wages for all hours worked; failed to pay wages owed to them upon discharge or resignation; failed to keep complete or accurate payroll records; and failed to properly compensate Plaintiff and other class members. (Id. ¶¶ 35-41.)

## III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332.

Generally, courts must "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "However, 'no anti-removal presumption attends cases invoking CAFA….'" Garcia v. Wal-Mart Stores, Inc., 2016 WL 6068104, at *3 (C.D. Cal. Oct. 14, 2016) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014)). Instead, Congress intended CAFA to be interpreted expansively. Ibarra v. Manheim Investments, Inc., 775 F. 3d 1193, 1197 (9th Cir. 2015).

A defendant seeking removal of an action to federal district court need only offer a "short and plain statement of the grounds for removal" in its notice of removal. 28 U.S.C § 1446(a). To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices." Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021 (9th Cir. 2007) (citations omitted).

To satisfy CAFA's amount-in-controversy requirement, "a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000." Garcia 2016 WL 6068104, at *3 (citing Ibarra, 775 F. 3d at 1197). A removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Dart Cherokee, 135 S. Ct. at 553. Where a plaintiff questions the amount in controversy asserted, further evidence establishing that the amount alleged meets the jurisdictional minimum is required. Id. at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 554.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Ibarra, 775 F.3d at 1197 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

## IV. DISCUSSION

Plaintiff argues that removal was improper because Defendant has not established by a preponderance of the evidence that the amount in controversy for Plaintiff's individual claims exceeds $75,000, or that the amount in controversy for the class exceeds $5,000,000. (See Mot.) For the reasons described below, the Court agrees.

### A. CAFA (Exceeding $5,000,000)

Plaintiff moves to remand on the ground that Defendant failed to prove by a preponderance of the evidence that the amount in controversy exceeds the $5,000,000 jurisdictional minimum under CAFA. In the Notice of Removal ("NOR"), Defendant asserts that the amount in controversy requirement under CAFA is satisfied because the maximum potential value of Plaintiff's claims places at least $5,618,862.27 in controversy, excluding attorneys' fees and interest. (NOR ¶ 48.) Defendant estimates that attorneys' fees may be 25% of the potential damages, or $1,404,715.57. (Id. ¶ 50.)

#### 1. Evidentiary Support

The Complaint does not specify the amount of damages sought, or the frequency of the alleged violations. (Mot. at 5 (pointing to Compl. ¶¶ 42-49).) "Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing Ibarra, 775 F.3d at 1199). "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Id. (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016).

In calculating the amount in controversy, Defendant relies on the Declaration of Melanie Chenye, Director of Finance for Southwire, who oversees the company's payroll functions. (Cheyne Decl. ¶¶ 1-2.) Cheyne attests that she has "personal knowledge of Southwire's payroll policies and practices" and those "relating to the work schedules of Southwire's non-exempt employees[.]" (Id. ¶ 2.) Cheyne asserts that she "reviewed the personnel and payroll information for Southwire's employees in California, which include information such as: the total number of employees who were employed on a non-exempt basis, their respective hire and termination dates, and their respective hourly rates of pay." (Id.)

From this review, Cheyne estimates that Southwire employed approximately 258 employees from June 17, 2016 to January 21, 2021, (id. ¶ 4), who worked approximately 31,073 workweeks in this period, (id. ¶ 5), and had an average hourly rate of pay of approximately $21.26

(id. ¶ 7.) Further, "the vast majority of non-exempt employees who worked … during this time period were paid on a weekly basis." (Id. ¶ 8.)

Plaintiff argues that this information is insufficient, as Defendant failed to produce the reports or summary payroll records that formed the basis of Cheyne's declaration. (Mot. at 6.) Plaintiff adds that Defendant has exclusive access to this information and can easily produce these documents to substantiate Plaintiff's employment records. (Id.) Defendant counters that Cheyne's declaration states the figures necessary to calculate the amount in controversy based on review of the employer's timekeeping, payroll, and/or human resources. (Opp'n at 5.) The Court agrees. Defendant need not "support removal with production of extensive business records to prove or disprove liability and/or damages … at this premature (pre-certification) stage of the litigation." Muniz v. Pilot Travel Centers LLC, 2007 WL 1302504, at *4–5 (E.D. Cal. May 1, 2007); see also Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017) (rejecting objection over Defendant's alleged failure to provide an adequate foundation for a declaration and violation of Federal Rule of Evidence 1002 (Best Evidence Rule), finding that the declarant was the Vice President of Human Resources Operations, had access to employee-related information, including personnel files and payroll records, and stated that he reviewed the relevant records). "Where, as here, a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011); Bryant v. NCR Corp., 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018).

Defendant offers evidence of the number of employees that constitute the putative class, their average hourly rate of pay, and the number of weeks worked during the class period. "Based on that evidence, [Defendant] [may make] reasonable assumptions to calculate the potential liability of the purported class." Torrez, 2017 WL 2713400, at *3; see also Unutoa v. Interstate Hotels and Resorts, Inc., 2015 WL 898512, at *3 (C.D. Cal. Mar. 2, 2015) (finding defendant's evidence, which consisted of a declaration by a Payroll Supervisor stating the number of employees employed during the class period who typically worked eight hour shifts, supportive of assumed rates of violation). To determine whether this evidence is in fact sufficient to support Defendant's assumptions, the Court considers Defendant's assumptions and calculations for each claim in turn.

   2. **Meal and Rest Premiums (Claims Two and Three)**

Plaintiff argues that Defendant artificially inflates amount in controversy calculations for Plaintiff's meal and rest period violation claims. (Mot. at 17.) In her Complaint, Plaintiff alleges that "[a]s a pattern and practice, … Plaintiff and other class members (but not all)" were required to work without the meal period and/or rest period required under the applicable California law. (Compl. ¶¶ 57-60, 67-69.)

Defendant's Director of Finance attests that "almost all of the non-exempt employees who worked for Southwire in California [from June 17, 2016 to the present] were scheduled to work 8 hours a day, 5 days a week." (Cheyne Decl. ¶ 3.) Defendant assumes three meal period

violations per week, or a 60% violation rate. (NOR ¶ 42.) Defendant similarly assumes three rest period violations per week, or a 30% violation rate. (Id. ¶ 43.) Applying this rate to the estimated amount of workweeks worked by non-exempt employees during the relevant period, Defendant estimates $1,981,835.94 damages for meal period violations, and the same amount of damages for rest period violations. (Id. ¶¶ 42-43.) Totaling almost $4 million, these calculations make up the majority of Defendant's estimated amount in controversy.

Plaintiff argues that Defendant fails to offer any reason or evidence to support this violation rate. (Mot. at 17.) While the Complaint alleges a "pattern and practice" of noncompliance with meal and rest period requirements, (Compl. ¶¶ 57-60, 67-69), Plaintiff argues that such "pattern or practice" allegations are insufficient to establish a violation rate, which could be once every two weeks, once a month, or once every three months. (Mot. at 18.) Yet, Cheyne's declaration does not include any information about how frequently putative class members missed meal and rest periods, or any records to support its calculations. (Mot. at 18-19.) Thus, Plaintiff asserts that given Defendant's scarce evidence supporting their estimate, there is no reasonable basis to assume a 60% violation rate. (Mot. at 18.)

While "a damages assessment may require a chain of reasoning that includes assumptions[,]…those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1199 (9th Cir. 2015). Numerous courts have rejected the assumption of any particular violation rates for "pattern and practice" allegations absent evidence supporting such assumptions. (Mot. at 18-19.) See, e.g., Basile v. Aaron Bros., Inc., 2018 WL 655360, at *2 (S.D. Cal. Feb. 1, 2018) ("Although [the "pattern and practice"] allegations indicate that violations were regular, they do not speak to their frequency, and are therefore insufficient to support the assumption of any particular rate of violation."); Sanders v. Old Dominion Freight Line, Inc., 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture."); Baretich v. Everett Fin., Inc., 2018 WL 4579857, at *5 (S.D. Cal. Sept. 25, 2018) ("Ms. Dworshak's declaration does not address Defendant's alleged violation rates and thus offers no information by which the Court may conclude that Defendant's assumptions were not 'pulled from thin air.'")

As Defendant points out, however, numerous courts have also "found violation rates between 25% to 60% to be reasonable based on 'pattern and practice' and 'policy and practice' allegations." Zamora v. Penske Truck Leasing Co., L.P., 2020 WL 4748460, at *3 (C.D. Cal. Aug. 17, 2020); Castillo v. Trinity Servs. Grp., Inc., 2020 WL 3819415, at *7 (E.D. Cal. July 8, 2020) (citing cases); see also Torrez, 2017 WL 2713400, at *16 (noting that "pattern and practice" allegations could be "reasonably interpreted to imply nearly 100% violation rates"). In line with these authorities, the Court rejects the view that any assumed violation rate would be unreasonable. But, as Plaintiff points out, Defendant's authorities concern lower violation rates than those assumed here, and/or additional evidence beyond that offered here. See, e.g., Tennison v. Hub Grp. Trucking, Inc., 2020 WL 7714702, at *7 (C.D. Cal. Dec. 28, 2020) (accepting assumption of violation of one meal period and one rest period per week); Zamora,

2020 WL 4748460, at *3 (holding violation rates of 10% to be reasonable); Torrez, 2017 WL 2713400, at *3 (holding violation of two meal periods and two rest periods per week to be reasonable). It is not clear to the Court why assuming a violation rate on the highest end of this range (60% for meal periods and 30% for rest periods) for every employee is warranted here, nor does Defendant submit any supplemental declarations or evidence to address these concerns. "Upon review of the pleadings and evidence submitted, Defendant offers no reason 'grounded in real evidence' as to why a 60% violation rate is appropriate." Baretich, 2018 WL 4579857, at *5.

The Court will not propose a reasonable violation rate for this case, as the court need only "weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own." Harris v. KM Indus., Inc., 980 F.3d 694, 701 (9th Cir. 2020). But the Court notes that applying the lower violation rates found reasonable in Torrez (2 meal periods and 2 rest periods per week) or in Tennison (1 meal period and 1 rest period per week) would potentially bring the amount in controversy calculations below the CAFA threshold.

The Court finds that Defendant has not satisfied its burden by a preponderance of the evidence as to the amount in controversy with respect to Plaintiff's meal and rest period claims.

3. **Overtime Wages (Claim One)**

Plaintiff alleges that "[a]s a pattern and practice … Defendants failed to pay overtime wages to Plaintiff and other class members for all hours worked." (Compl. ¶ 35.) Plaintiff further alleges that "Plaintiff and other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation." (Id.) In calculating an estimated amount in controversy, Defendant assumes that Plaintiff and the class were not paid one half-hour (0.5) of overtime wages per workweek, which amounts to approximately $495,458.99 in unpaid wages. (NOR ¶ 41.)

Plaintiff argues that the 0.5 per week assumption was pulled "[o]ut of thin air," and that Defendant has no factual basis for its calculations. (Mot. at 20.) However, as Plaintiff acknowledges, courts have repeatedly held that assumptions of one hour of missed overtime per pay period are reasonable, based on plaintiffs' allegations of "pattern and practice" violations. Mackall v. Healthsource Glob. Staffing, Inc., 2016 WL 4579099, at *4 (N.D. Cal. Sept. 2, 2016) (citing cases). Moreover, in her Reply, Plaintiff concedes that Defendant's overtime calculation is "based on variables with reasonable assumptions" (Reply at 6). The Court finds that Defendant's calculation of $495,458.99 for unpaid overtime is reasonable.

4. **Minimum Wages (Claim Four)**

Plaintiff alleges that "[a]s a pattern and practice, during the relevant time period…, Defendants failed to pay minimum wages to Plaintiff and other class members (but not all) as required, pursuant to California Labor Code sections 1194 and 1197." (Compl. ¶ 76.) In its Opposition, Defendant supplements its original calculations to account for off-the-clock work which it argues would not be captured by Defendant's overtime calculations. (Opp'n at 7.)

Defendant argues that, because Plaintiff alleges separate causes of action for unpaid overtime and minimum wages, aggregating separate minimum wage and overtime calculations is appropriate. (Id. at 8.) Defendant thus adds $310,730 to its amount in controversy calculations, assuming 0.5 hours of off-the-clock work per workweek. (Id.)

Plaintiff counters that this amounts to improper "double counting." (Reply at 6.) That is because "[h]ow [unpaid] time should be counted for purposes of calculating the amount-in-controversy depends on whether employees worked more or less than 8 hours per day or 40 hours per week." Vasquez v. Randstad US, L.P., 2018 WL 327451, at *3 (N.D. Cal. Jan. 9, 2018). "If an employee's total hours (including the unpaid time) exceeded the overtime threshold of 8 hours per day or 40 hours per week, then the employee would receive overtime damages, not minimum wage damages, for that time. On the other hand, if the employee's total hours fall below the overtime threshold, then the employee would be entitled to minimum wage damages, not overtime damages, for that time." Id. Here, Defendant's Director of Finance asserts that "almost all of the non-exempt employees who worked for Southwire in California during [the relevant] time period were scheduled to work 8 hours a day, 5 hours a week." (Cheyne Decl. ¶ 3.) Thus, Defendant fails to offer any reasonable basis to assume that employees would be entitled to minimum wage damages. The Court finds that this calculation is therefore unreasonable.

### 5. Wage Statement and Waiting Time Penalties (Claims Five and Six)

Plaintiff alleges that, "[a]s a pattern and practice, … Defendants failed to provide complete or accurate wage statements to Plaintiff and other class members." (Compl. ¶ 39.) Plaintiff also alleges that "[a]s a pattern and practice, … Defendants failed to pay Plaintiff and other class members the wages owed to them upon discharge or resignation." (Id. ¶ 38.) Defendant assumes a violation rate of 100% for failure to issue accurate wage statements and to timely pay wages at the end of class members' employment. (NOR ¶¶ 44, 47.)

While Plaintiff objects to a 100% violation rate, this assumption is reasonable and consistent with Plaintiff's allegations. "If Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay violations." Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc., 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019). That is because "Defendant need only have caused a single violation per pay period for all wage statements to be inaccurate, and need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply." Id. (citing Cal. Lab. Code §§ 201(a), 226(a)). The Court finds Defendant's calculation of $601,800 for wage statement penalties and $402,566.40 for waiting time penalties to be reasonable.

//
//
//

### 6. Attorneys' Fees

Defendant estimates the amount of attorneys' fees in controversy at 25% of the potential damages, or in the alternative, based on the lodestar method (applying hourly rates and hours expended in a previous case). (NOR ¶¶ 50-51.) The Court finds that using a 25% benchmark rate as a starting point to calculate potential attorneys' fees is appropriate. See <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1048 (9th Cir. 2002); <u>Noriesta</u>, 2019 WL 7987117, at *6.

The parties disagree as to the underlying amount in controversy. Defendant calculates twenty five percent of the potential award for all claims ($5,618,862.27). (NOR ¶ 50.) Plaintiff counters that including the amount in controversy for meal and rest period premiums and waiting time penalties to calculate attorneys' fees is improper. (Reply at 10.) Plaintiff is correct that some courts have so found. <u>Noriesta</u>, 2019 WL 7987117, at *6 (noting parties' acknowledgment that "California law does not allow a prevailing plaintiff to recover attorney's fees for claims of meal and rest break violations") (citing <u>Kirby v. Immoos Fire Prot., Inc.</u>, 53 Cal.4th 1244, 1255 (2012)); <u>Ling v. P.F. Chang's China Bistro</u>, 245 Cal.App.4th 1242, 1260-61 (2016) ("Because a section 203 claim is purely derivative of 'an action for the wages from which the penalties arise,' it cannot be the basis of a fee award when the underlying claim is not an action for wages."). But courts disagree as to whether attorneys' fees are available for these claims, <u>In re: Autozone, Inc.</u>, No. 3:10-MD-02159-CRB, 2016 WL 4208200, at *7 (N.D. Cal. Aug. 10, 2016) (listing cases), and Plaintiff improperly introduces this argument for the first time in her Reply.

In any event, the Court need not decide whether including these claims in the attorneys' fees calculation is appropriate because, as established above, Defendant's estimated meal and rest period premiums are unreasonable. At 25% of the remaining estimated claims, the attorneys' fees calculation is insufficient to increase the estimated amount in controversy above CAFA's jurisdictional threshold.

In total, for the purposes of this Motion, the Court finds the following calculations to be reasonable: $495,458.99 for overtime claims,[1] $601,800 for wage statement penalties, $402,566.40 for wage statement penalties, and up to 25% of the total, or $374,956.348, for attorneys' fees. This amounts to a total calculation of $1,874,781.74 in controversy, significantly less than the $5,000,000 jurisdictional threshold under CAFA.

The Court therefore GRANTS Plaintiff's Motion as to the class claims.

---

[1] In its Opposition, Defendant adjusts its calculation for meal period violations, rest period violations, unpaid overtime, and unpaid minimum wages to account for damages after removal. (Opp'n at 17.) Because the Court rejects Defendant's meal and rest period premiums and minimum wages estimates, assuming Defendant's claim is reasonable, this would only adjust the unpaid overtime estimates from $495,458.99 to $672,815.74 (Opp'n at 18), and in turn, the estimated attorneys' fees from $374,956.348 to $419,295.53. This does little to overcome the large gap between the estimated amount in controversy here and the $5,000,000 minimum required under CAFA.

## B. Individual Claims (Exceeding $75,000)

### 1. Wage and Hour Claims

Defendant applies the same assumptions described above to its calculations of the amount in controversy for most of Plaintiff's individual claims. For the reasons established above, the Court finds that Defendant's assumption of a 60% violation rate for Plaintiff's meal period claim (estimated at $2,898.48) and a 30% violation rate for her rest period claim (estimated at $2,898.48) is unreasonable. Defendant's minimum wage calculations ($546) are similarly unreasonable. On the other hand, Defendant's calculations for waiting time penalties ($4,459.20) and wage statement penalties ($4,000) are reasonable for the reasons explained above. While Defendant assumes one hour of overtime per workweek for Plaintiff (for a total of $1,449.24) as opposed to 0.5 hour per workweek for the class, the Court finds that this is also a reasonable assumption. See Mackall, 2016 WL 4579099, at *4 (finding that assuming one hour of missed overtime per pay period based on "pattern and practice" allegations is reasonable). The total estimate of Plaintiff's overtime, waiting time, and wage statement claims is $9,908.44.

### 2. Punitive Damages

Plaintiff seeks special damages, punitive damages, interest, and/or exemplary damages according to proof at trial. (Compl. at Prayer for Relief.) Defendant employs a one-to-one ratio of its damages calculations to calculate punitive damages. (NOR ¶ 24.) Because Defendant points to other authorities supporting the proposed ratio for punitive damages, the Court finds that it is reasonable. See Guillen v. Kindred Healthcare Operating, Inc., 2018 WL 1183354, at *5 (C.D. Cal. Mar. 7, 2018) ("District courts within the Ninth Circuit have described a 1:1 ratio of punitive damages to compensatory damages as 'conservative' for purposes of assessing the amount in controversy requirement."). A one-to-one ratio of the total damages estimates found to be reasonable above would result in $9,908.44 in punitive damages. [2]

### 3. Attorneys' Fees !

"[W]here an underlying statute authorizes an award of attorney's fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy[.]" Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1155–56 (9th Cir. 1998). Here, Plaintiff seeks attorneys' fees pursuant to California Labor Code sections 226, 226.7, 510, 1194, 1197, 1198, 2802, and Code of Civil Procedure Section 1021.5. (Compl. at Prayer for Relief.) Defendant contends that Plaintiff's attorneys' fees place the amount in controversy above the jurisdictional minimum. (Opp'n at 23.) Defendant estimates that Plaintiff's counsel will expend at least 150

---

[2] While Plaintiff argues in her Reply that she only requested punitive damages for her seventh cause of action for unreimbursed business expenses, she did not include this argument in her Motion. Because Defendant has had no opportunity to respond to this argument, the Court declines to consider it.

hours prosecuting Plaintiff's individual claims, at a minimum hourly rate of $500 to $575. (NOR ¶ 22; Opp'n at 24.)  In Sasso v. Noble Utah Long Beach, LLC, a court in this district noted that "[r]ecent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours." 2015 WL 898468, *12 (C.D. Cal. March 3, 2015). It therefore found that 100 hours was an "appropriate and conservative estimate" to calculate attorneys' fees. Id. Here, "applying the estimate of 100 to 300 hours in Sasso," Defendant estimates that Plaintiff's attorney will expend at least 150 hours prosecuting Plaintiff's individual claims. (NOR ¶ 22.)

Defendant's estimate of future attorneys' fees is "far too speculative." Gaasterland v. Ameriprise Fin. Servs., Inc., 2016 WL 4917018, at *10 (N.D. Cal. Sept. 15, 2016).  In Sasso, the court cautioned that future attorneys' fees should be reasonable and based on evidence, and after noting the "recent estimates" Defendant relies on, found an estimated fee award of $30,000 (based on 100 hours times a $300 hourly rate) to be reasonable. 2015 WL 898468, *12. Yet, here, Defendant relies on the estimate in Sasso and hasty comparisons to hours expended in other cases to estimate an attorneys' fees award of $75,000 to $86,250, making up the bulk of the amount in controversy.  The Court declines to consider this speculative and unsupported estimate for purposes of the amount in controversy requirement. Gaasterland, 2016 WL 4917018, at *10.

The Court therefore finds that the amount in controversy for Plaintiff's individual claims is far below the threshold amount necessary for federal diversity jurisdiction.  The Court GRANTS Plaintiff's Motion as to Plaintiff's individual claims.

## V.     CONCLUSION

!

For the reasons above, the Court GRANTS Plaintiff's Motion to Remand.  Defendant's motion to strike or dismiss is DENIED AS MOOT.  The May 24, 2021 hearing is VACATED.  The case is REMANDED to the Superior Court of California for the County of San Bernardino.

**IT IS SO ORDERED.**